## Case No. 1,845.

### BRETT v. ZACHRISSEN.

[6 Betts' D. C. MS. 68.]

District Court, S. D. New York. December 31, 1845.

SHIPPING—CHARTER PARTY—CHARTERERS' LIABILITY.

[A charter party was for a voyage from New York to Chagres and other ports, as the charterers or their agent might direct, and back to New York, the charterers to provide the vessel cargo sufficient at least for ballast, and to pay during the voyage $450 a month, or parts of months, pro rata. The vessel was lost in Chagres harbor, and the cargo saved abandoned to the underwriters. *Held*, that the charterers were liable to the time of the loss, and that the fulfilling by the vessel of one or more of the contemplated parts of the engagement

---

was not a condition precedent to a recovery of the stipulated compensation.]

[In admiralty. Libel in personam by Gustavus A. Brett against Thorgny Zachrissen, consul, to recover on a charter party. A verdict was taken for the plaintiff, subject to the opinion of the court on a case made. Verdict affirmed.]

PER CURIAM. A verdict was taken for the plaintiff in the sum of $432.91, subject to the opinion of the court on a case made. The action was upon a charter party. The charter was "for a voyage from the port of New York to Chagres and other ports on the Spanish main, or the west on her return, as the chartered parties or their agent may direct, and back to New York." The whole of the vessel (except necessary room for the crew, sails, cables, and provisions) was to be at the sole use and disposal of the chartered parties during the voyage aforesaid.

The owner was to keep the vessel tight and strained and well manned, and provisions for the voyage, and to receive on board during the voyage all such lawful goods and merchandise as the chartered parties or their agents may think proper to ship.

The charter parties stipulated to provide the vessel cargo sufficient at least for ballast, and to pay for the charter or freight of the vessel, during the voyage aforesaid, $450 per month, or parts of months, in proportion for the time employed, and pay all the foreign port charges, pilotage, and lighterage. The captain was to be paid, if he required it for disbursements in any foreign port, not exceeding $100, to be considered as so much paid on the charter. The charter was to commence February 2, 1843, "and terminate when the cargo is discharged at New York."

The vessel was loaded at New York by the chartered parties on the 9th of February, with a supercargo on board, bound to Chagres. He was there to take the instructions of the consignee as to the disposition of the cargo and her ulterior destination. On entering the harbor of Chagres early in March, the vessel struck a rock, bulged, and was abandoned as a total loss. A portion of the cargo was saved in a damaged state by lighters and the aid of boats from a French man of war. Some was rescued by salvors, and some floated ashore, but a large portion was a total loss. The men worked on the wreck and in saving cargo a fortnight. The cargo was abandoned to the underwriters, and that saved was sold at Chagres at auction for their benefit.

The defence to the action rests upon the points of law—First, that the contract was entire, and no freight was due until the whole voyage out and back to New York was performed; second, that if the doctrine "pro rata itineris" might apply to the contract, there was no delivery and acceptance of the cargo at Chagres which could lay the foundation for the recovery of a part.

If the right of the plaintiff to recover in proportion to the services rendered by the vessel depended upon the fact that cargo was delivered, or freight, in its third sense, earned, I should not regard the involuntary acceptance of part of the cargo at Chagres in a state of wreck, and to save it from destruction, as an act charging the chartered parties with payment of freight. And the rule of law is incontestable that, if the charterer is not to have freight until the ending of the voyage, an intermediate destruction of the voyage by enemies of the country, or ship-wreck, will deprive him of all claim to compensation for the part performance of the contract.

But I do not regard the charter party as falling within either of these principles of the law merchant. It is somewhat peculiar in its frame, as it manifestly does not look merely to the shipment of an outward or return cargo, as the chartered parties, are only bound to lade on board sufficient for ballast, and there is no stipulation to deliver cargo according to the bills of lading.

The testimony of the supercargo would intimate that an essential service expected from the vessel in the adventure was carrying and re-carrying cargoes between ports and the main, according to the condition or demands of the market. These circumstances may not rightfully come inside of the construction of the contract itself, yet it does not seem unusual to admit similar evidence in explanation of the situation and purposes of the parties antecedent to and leading to the charter. Havelock v. Geddes, 10 East. 555.

Without reference to extraneous testimony on either side, the charter party, in my judgment, is to be construed as putting the vessel and her equipments in solida under the exclusive contract of the charter parties. They could employ her without limitation of tax, at their own and the discretion of the agents, she not being released from the charter until the cargo is discharged at New York; and, therefore, whether it be regarded an adventure seeking out places for future mercantile enterprise, in which the vessel is at first to be solely employed, or to convey cargoes out and back, the principle upon which compensation is to be made would be the same.

I accordingly hold that the agreement is to pay for the vessel, the time she is so used by the charter parties, and that her fulfilling one or more of the contemplated parts of the engagement is not a condition precedent to her being entitled to the stipulated compensation. The verdict in this view of the case is correct, and is accordingly affirmed.